Filed 5/2/23  P. v. Erazo CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B318350 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA094253) |
| v. | |
| ANDREW ERAZO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard H. Kirschner, Judge.  Affirmed with directions.

Jennifer Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Marc A. Kohm and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

A jury convicted defendant Andrew Erazo of one count of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) for stabbing a man in the course of an altercation. The jury also found that Erazo personally inflicted great bodily injury in the commission of the offense. (*Id.*, § 12022.7, subd. (a).) The court sentenced Erazo to the low term of two years for the assault charge, plus three more years for the great bodily injury enhancement.

Erazo contends that the trial court erred by refusing a defense request to instruct the jury on acts in lawful defense of others (CALCRIM No. 3470), and that the court committed judicial misconduct by failing to remain impartial in questioning the victim. We find no prejudicial error and affirm Erazo's conviction. We agree with the parties regarding an error in the abstract of judgment, and remand with directions to correct that error.

## FACTUAL BACKGROUND

Late in the morning on February 9, 2021, Alex H.[1] was delivering food to a client at an apartment building in Reseda as part of his job working for a home-care company. A surveillance video located at the front of the apartment building captured the ensuing events. The surveillance footage shows Erazo and a juvenile, Fernando E., standing on the sidewalk in front of the building, with Alex's van double-parked on the street in the background.

In the video Alex stops briefly as he walks past the two men. According to Alex, Fernando said to him, "That's my food,"

---

[1] Following the guidance of California Rules of Court, rule 8.90(b)(4), we refer to the victim by his first name and last initial.

and Alex told him it was not. Alex then walked up to the front entrance, where he gave the food to its intended recipient. As Alex went back toward his van, he again encountered the two men. The video shows Fernando walking alongside Alex, who again briefly pauses. Alex testified that Fernando called him profanities and again said the food was his, but Alex ignored him.

Fernando left Alex alone for a moment as Alex returned to his van and began preparing food for his next delivery. The surveillance video shows Fernando approaching Alex at the van while Erazo remains behind near the front gate of the apartment building. According to Alex, Fernando first apologized, but then attacked Alex from behind, punching him on the side of his head. A palm tree blocks the surveillance camera's view of this initial part of the confrontation, but as the fight continues, the two again become visible. In the portion of the fight visible in the video, Alex moves forward with his arms extended while Fernando backpedals until the two fall to the ground just out of view of the camera. Alex testified that he was attempting to defend himself while Fernando kept attacking him. Finally, Alex pushed Fernando back until they both fell onto the sidewalk, with Alex landing on top of Fernando. A witness who lived in the building across the street testified that Alex was only trying to defend himself.

Alex testified that he was trying to hold down Fernando's hands so that Fernando could not strike him when Erazo approached and started hitting and kicking him. The surveillance video shows Erazo intervening almost immediately after Alex and Fernando fall to the ground. Erazo stands over the two men and throws punches. Erazo then runs back to the fence in front of the building and grabs the jacket he had left

there. Alex and Fernando remain obscured from view, but the video shows Erazo standing over them, making punching and kicking motions. Alex testified that Erazo struck him primarily on his right side, but also on his left. He said that Erazo's strikes felt different, as if "something had broken my skin and had entered my body."

In the video, Alex manages to stand up, while Erazo and Fernando back away. All three stoop to pick up items left on the ground. According to Alex, Erazo took Alex's phone, which had fallen onto the ground. The video shows Erazo and Fernando finally fleeing the scene with Alex staggering after them. According to Alex, he yelled at the men to give back his phone, and Erazo eventually threw the phone onto the street. Alex returned to his van, at which point he realized he was bleeding from his right side and fell to the ground.

An ambulance transported Alex to a hospital, where he was treated for a broken rib, a partially collapsed lung, and wounds requiring stitches on both sides of his body. He remained in the hospital for three days recovering.

Police arrested Erazo and Fernando two days later and found a folding knife in Fernando's possession.

## DISCUSSION

### A. The Trial Court Did Not Err by Refusing to Instruct on Defense of Another

At the close of evidence in the case, Erazo's attorney requested that the court instruct the jury on self-defense or defense of another. The trial court refused the request on the ground that there was no substantial evidence to support the instruction. Erazo contends this was error, but we disagree. Even if Erazo acted in defense of Fernando, there is no evidence

4

to show that he reasonably believed he needed to use potentially deadly force against Alex.

"It is well settled that a defendant has a right to have the trial court, on its own initiative, give a jury instruction on any affirmative defense for which the record contains substantial evidence [citation]—evidence sufficient for a reasonable jury to find in favor of the defendant [citation]—unless the defense is inconsistent with the defendant's theory of the case [citation]. In determining whether the evidence is sufficient to warrant a jury instruction, the trial court does not determine the credibility of the defense evidence, but only whether 'there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt.' " (*People v. Salas* (2006) 37 Cal.4th 967, 982.)

We review a trial court's failure to give an instruction de novo (*People v. Manriquez* (2005) 37 Cal.4th 547, 581), resolving any doubt in favor of the defendant (*People v. Tufunga* (1999) 21 Cal.4th 935, 944).

The doctrine of defense of others is an absolute defense to criminal liability for assault crimes. (*People v. Adrian* (1982) 135 Cal.App.3d 335, 340 (*Adrian*).)[2]  It requires that the defendant "reasonably believed that a third party was in imminent danger of suffering bodily injury or of being touched unlawfully and to have reasonably believed that the immediate use of force was

_____

[2] *Adrian*, like some of the other cases cited in this opinion, involved self-defense rather than defense of others. (See *Adrian*, *supra*, 135 Cal.App.3d at p. 340.)  The two defenses are closely related (*People v. Randle* (2005) 35 Cal.4th 987, 994, overruled on another ground by *People v. Chun* (2009) 45 Cal.4th 1172, 1201), such that jurisprudence on one is generally applicable to the other.

necessary to defend against that danger." (*People v. Abelino* (2021) 62 Cal.App.5th 563, 579, fn. 13.) In addition, the defendant may use only such force as is reasonably necessary under the circumstances. (*People v. Pinholster* (1992) 1 Cal.4th 865, 966, disapproved on another ground by *People v. Williams* (2010) 49 Cal.4th 405, 459; accord, CALCRIM No. 3470.)

Erazo's claim that he was entitled to an instruction on defense of others fails because of the final requirement described above. There was no substantial evidence to support a claim that he "used no more force than was reasonably necessary to defend against [the] danger" posed by Alex. (CALCRIM No. 3470.) Even interpreted in the light most favorable to Erazo, the available evidence—Alex's testimony and the surveillance video—depicted no more than an ordinary fistfight. Courts have occasionally held that a defendant who uses a weapon against an unarmed or less-well-armed attacker may be entitled to an instruction on self-defense, but these cases involve situations where the defendant might have been at serious risk without the weapon. (E.g., *People v. Elize* (1999) 71 Cal.App.4th 605, 615-616 [jury might have believed that the defendant who fired a handgun "was sought out and attacked by two angry women much larger than he, that he was being beaten with pipes . . . , that one of the women tried to take his handgun, and that he struggled with that woman while the other continued to beat him"]; *People v. Jackson* (1965) 233 Cal.App.2d 639 [defendant who used knife had poor vision and was older and much smaller than the unarmed attacker].) In this case, Alex appeared to be physically larger than the teenage Fernando, but Erazo had no reason to believe that Alex could have overpowered both Fernando and an unarmed Erazo. There was no reasonable justification for Erazo

to run back to the building's fence, where he grabbed his jacket and presumably a knife, and to begin stabbing Alex.

Erazo notes that when a defendant acts in defense of another, "reasonableness is tested from the point of view of the defendant, not the point of view of the person being defended. (*People v. Randle*, *supra*, 35 Cal.4th at pp. 999-1000.)" (*People v. Genovese* (2008) 168 Cal.App.4th 817, 830.) Thus, "one coming to the defense of others is protected by the mistake-of-fact doctrine and may act upon the situation as it reasonably seems to be." (*Ibid.*) Erazo argues that he was at some distance when the confrontation started, and suggests that his view was obscured by obstacles just as much as the surveillance camera's was.

This argument overstates the extent to which Erazo's view was obscured. Although Erazo stood between the camera and Alex's van and thus must have seen the initial confrontation from a similar viewpoint, the camera was located much farther away, and its view was partially blocked by a palm tree that was not in Erazo's line of sight. In addition, Erazo's argument establishes at most that he could not see how the fight started and did not know that Fernando initiated it. By the time Alex and Fernando moved to the sidewalk, Erazo was standing nearby and was well-positioned to realize stabbing Alex was in no way reasonably necessary in order to defend Fernando.

## B. The Trial Court Did Not Commit Judicial Misconduct in Questioning the Victim

Erazo contends that the trial court committed judicial misconduct by playing the role of a second prosecutor in questioning Alex about the attack. We disagree. Evidence Code section 775 authorizes the trial court to "call witnesses and interrogate them the same as if they had been produced by a

7

party to the action."  In this case, the trial judge did not violate the obligation to be " ' " 'temperate, nonargumentative, and scrupulously fair' " ' " (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 818) in the questions he asked.

During cross-examination, defense counsel questioned Alex about an apparent inconsistency in his testimony.  Alex had testified that at one point, "the impact [of] the punches [was] very strong, at that moment as I was being punched I felt like something had broken my skin and had entered my body," but he also stated that he never saw Erazo or Fernando holding a weapon and was not aware he had been stabbed until he returned to his van after the fight.  Alex explained that "when I was being punched and kicked the pain was totally different.  At that time I didn't notice or realize."  On redirect, the prosecutor asked Alex about the portion of the fight when he was on the ground.  Alex responded that Erazo "was on my right side and he was hitting me on the right side.  So most of the impact [was] to my right side."  Alex then added, "And also they were hitting me on my left side as well."  Up to this point, Alex had not stated clearly which of his assailants had stabbed him.

When both the prosecution and defense stated that they had no more questions, the trial court said, "I have a question or two, sir."  The court then questioned Alex as follows:

"The Court:  . . . You mentioned on cross-examination that at some point you felt hard punches that were harder than what you [had] received earlier; is that correct?

"The Witness:  Yes.

"The Court:  Did you receive those hard punches when you were grappling with [Fernando] near your van?

"The Witness:  No.

"The Court: Did you feel those hard punches coming from [Fernando] when you were grappling with him on the sidewalk?

"The Witness: No.

"The Court: Did you feel those hard punches after [Erazo] joined the attack?

"The Witness: Yes.

"The Court: How would you describe those hard punches in terms of how they were different from the earlier punches you had received?

"[Defense counsel]: I have to object to the court's final questioning.[3]

"The Court: I'll note your objection and overrule it.

"The Witness: The first kick that he kicked my side at that moment my body kind of like jolted or jumped because it was a very hard kick. And I kind of, like, took myself back to the first position a little bit. And the next punch I felt from [Erazo] I felt it like it was a different kind of punch, I felt the difference.

"The Court: How was it different, if you can describe it[?]

"The Witness: [Fernando]'s punches were . . . like a regular punch."

Alex did not explain further exactly how Erazo's punches were different. The trial court offered both sides an opportunity to question Alex further, but both sides declined.

---

[3] The People contend that Erazo forfeited his claim of judicial misconduct by raising only this single objection to the trial court's questioning. We disagree, as the objection was arguably to all the court's prior questioning, and the court's decision to overrule the objection might have made additional objections appear futile.

Erazo argues that by engaging in this questioning, the trial court "acted as a second prosecutor" to elicit important evidence the prosecutor had failed to obtain, helping the prosecution prove "that appellant was the person wielding the sharp object and thus, personally inflicted great bodily injury."

But a trial court does not commit judicial misconduct by asking neutral questions that elicit testimony useful for one side or the other. Instead, a court commits judicial misconduct by appearing to take sides. Thus, in *People v. Cook* (2006) 39 Cal.4th 566, the Supreme Court rejected the defendant's claim of judicial misconduct, explaining that, "Although answers by two witnesses . . . to the trial court's questions may not have been favorable to the defense, the questions themselves did not create the impression that the court was allied with the prosecution." (*Id.* at p. 598.) Judicial misconduct occurs when the trial court acts as an advocate. For example, in *People v. Santana* (2000) 80 Cal.App.4th 1194, the court found the trial court committed misconduct by "repetitiously, disparagingly and prejudicially question[ing] defense witnesses." (*Id.* at p. 1207.) "By belaboring points of evidence that clearly were adverse to [the defendant], the trial court took on the role of prosecutor rather than that of an impartial judge. By continuing this adversarial questioning for page after page of reporter's transcript, the trial court created the unmistakable impression it had allied itself with the prosecution in the effort to convict" the defendant. (*Ibid.*)

Similarly, in *People v. Perkins* (2003) 109 Cal.App.4th 1562, the court held that the trial court had engaged in prejudicial misconduct by effectively cross-examining the defendant, showing "egregious . . . bias against [the defendant] and partiality towards the People." (*Id.* at p. 1573.) After reviewing the transcript of

one instance of the trial court's questioning, the Court of Appeal concluded that "the judge's intent was to elicit from [the defendant] his admission that he knowingly and willfully violated a court's restraining order, and as such, impress on the jury a judicial imprimatur of the People's position." (*Id.* at p. 1571.)

The transcript in this case contains no indication that the court appeared to take sides in the trial. Erazo alleges that, "The court's line of questioning was presented to [Alex] and the jury in such a way that it was clear the court was expecting him to implicate [Erazo] as the person who stabbed him." We disagree. Erazo is correct that Alex's testimony to that point had left an ambiguity as to who had delivered the punches that were "very strong" and "felt like something had broken my skin." Erazo is also correct that the missing information was crucial to his guilt or innocence. But the transcript shows the trial court's questioning was designed to elicit the missing information, not to encourage Alex to give a single correct or particular answer. Alex could have just as easily answered that he did not know, or he might have given an explanation that aided in Erazo's defense.

Our Supreme Court has stated that " 'Evidence Code section 775 " ' "confers upon the trial judge the power, discretion and affirmative duty . . . [to] participate in the examination of witnesses whenever he believes that he may fairly aid in eliciting the truth, in preventing misunderstanding, in clarifying the testimony or covering omissions, in allowing a witness his right of explanation, and in eliciting facts material to a just determination of the cause." ' " ' [Citation.]" (*People v. Holmes, McClain and Newborn*, *supra*, 12 Cal.5th at p. 818.) The trial court's questioning of Alex did not exceed those bounds, and the court did not commit misconduct in its questioning.

11

**C.     The Abstract of Judgment Must Be Corrected by Deleting the Restitution Fine**

At Erazo's sentencing hearing, the court elected not to impose a restitution fine under Penal Code section 1202.4, subdivision (b).  The abstract of judgment, however, contains conflicting information on this fine.  At one point, it lists a $300 restitution fine, but later, it states that, "The court waives the restitution fine and court fees."  "Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls."  (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.)  Both sides agree that the abstract of judgment must therefore be corrected to reflect the court did not impose a restitution fine, and we will order the trial court to do so upon remand.

12

## DISPOSITION

The judgment of the trial court is affirmed.  The trial court is directed to prepare an amended abstract of judgment deleting the $300 restitution fine from item No. 5 and to forward a certified copy to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED


WEINGART, J.


We concur:



ROTHSCHILD, P. J.



BENDIX, J.

13